Next case on the calendar is United States v. Freeman. Mr. Zass, for Mr. Freeman, you reserve two minutes for rebuttal and you can begin whenever you're ready, Mr. Zass. Mr. Zass Good morning, Your Honor. It's Edward Zass, Federal Defenders of New York, for Roger Freeman. This appeal presents two legal issues. First, when does supervised release commence? Second, does supervised release run while the defendant is held in pretrial custody on charges that are ultimately dismissed without a conviction? Congress answered both of those questions in 18 U.S.C. section 3624E. Those answers mean that Mr. Freeman's supervised release began... Let's focus on commencement because the government's main argument on that is imprisonment is not limited. It doesn't say federal imprisonment. So if someone continues to be imprisoned on a state charge, that it never commences. So just from doing statutory interpretation again, the plain meaning of the term imprisonment, what's wrong with that argument? Well, Your Honor, I think the best place to start is with the language first in 3624A because it helps elucidate what the terms in 3624E are going to mean. So if I can just start there. 3624A says that a prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment less any time credited, et cetera. So a couple of things are clear from this provision. First, it's the Bureau of Prisons that is charged with the obligation of releasing the prisoner. I know, but we're talking about a more specific aspect here of releasing someone to supervision. And here in this subsection, it says the Bureau of Prisons is going to release to the supervision of a probation officer. And in this scenario, that doesn't happen. He doesn't get released to the probation. He gets put into state custody. So we're already in a situation that is not addressed by the first part of that subsection because he wasn't released to the supervision of probation officer, and he was not released from imprisonment either. He continued to be in prison. And I would just note that Justice Kennedy and Johnson talked about this precise sentence and said, in this context, it cites Webster's dictionary, means to let loose again, to set free from restraint. And then he says, as these definitions illustrate, the ordinary common sense meaning of release is to be freed from confinement. So there seems to be, in the view of the Supreme Court of the United States, a physical component to release that is absent here. So why should we ignore what the Supreme Court has already said we should do, which is follow the plain meaning? I have several responses to that, Your Honor. First, the Fifth Circuit has held that the plain meaning of the commencement provision is that imprisonment, is that supervised release commences upon the release from the custody of the Bureau of Prisons. Which case are you referring to? Garcia Rodriguez in the Fifth Circuit. Second, you made the point that Mr. Freeman was not released to the supervision of a probation officer. I do not necessarily agree with that statement. It depends on what one means by release to the supervision of a probation officer. As I understand what was going on in Subdivision E, there's a couple things going on. One is there's a clock, and that clock is starting, and it's starting at a very specific time. It's the specific date that the prisoner's federal term of imprisonment expires, and the Bureau of Prisons must then release the prisoner. So that's the clock part, but there's also a very important administrative component that Congress was specifying, because on that very date, things change. Up until that time, the BOP is in charge of supervising the prisoner. That's where he's being held. This provision that you quoted is meant to say, no, on that date, the person is going to be released to a different entity, in fact, a different agency, which is the probation office. But the commencement provision does not condition the commencement of supervised release on something actually happening in the real world. In other words, if a defendant is released on supervised release, he doesn't need to be released. I don't understand that argument. The thing that happens in the real world is the person is released from imprisonment. That would, in the real world, allow the supervision to begin. That can't happen here. The whole purpose of this, and you can explain to me where I'm missing something here. The whole purpose is to allow the purpose of supervised release is to allow someone to make an adjustment back when they're out of custody, back into the world, and to have the support to do that and to make sure that they don't fall back into criminal behavior. None of that happens when someone remains in custody in a state prison. It just doesn't happen. Your client had five parole violations, five. So he's a perfect example of why if someone just goes to state custody and doesn't have any type of freedom, the same risks are going to be there. Your Honor, Congress didn't say that imprisonment, that supervised release is told for people who desperately need supervision. It said explicitly this is a policy built into this provision that supervised release Do you view that supervised release simply disappears when a person is released into state custody? No, no, no. What's built into the statute is in 99% of the cases, the time in state custody will be told in narrow situations that are explicit in the text. So Congress thought about the problem that Judge Bianco identified. So that's the tolling. That's the tolling after 30 days. Yeah. Well, that's right. There's really three situations, I guess, that Congress thought about. One is a relatively short term of imprisonment, 29 days. Right. Supervised release runs during that period even though as a practical matter that person really can't comply with the normal conditions of supervised release while in prison. Right. But they also said So your argument then is they can't get supervised release while in prison, but nonetheless there's some tolling. That is exactly what the Supreme Court decided later. Yeah. In Mott, if a defendant is in state custody and is ultimately acquitted Yeah. or the charges are dismissed So let me just give you maybe from a 30,000 foot perspective. We've all been district judges. We're all used to sexing people. They go to prison. Then they get supervised release, which serves the purpose that Judge Bianco referred to. But what you're saying is there's really a different paradigm here when a person is put into state custody because we shouldn't be thinking in those duality terms. We ought to be thinking of supervised release as really an extension of the confinement or some control over the defendant that is subsumed within the state of your prison. That is almost exactly what I'm saying. Tell me why it's not. I want to know exactly what your argument is. My argument is that Congress explicitly thought about this problem. They understood that people could be on supervised release and then arrested, put in some kind of confinement. And they could have said supervised release will never run. It will be told during that period. They could have said it doesn't matter. It always is going to run during that period. They chose neither of those options. They said if you're in prison but you're acquitted or the charges are dismissed, that time constitutes supervised release. Okay. Now, you're over your time. I understand your point. Yes. You're over your time, but I would like you to address the second point. That is after he was ‑‑ his conviction was overturned, he was kept in custody for a period of, what, four months or something? No, no, almost five years. Oh, I'm sorry. I was going to say four years. Five years, almost five years. And under those circumstances, the other side's argument is that it was in connection with a conviction. But there was no conviction at that point. They're just saying that that's, I guess, a loose kind of association with the prior conviction or the possible further conviction. I don't know which. But in any event, he was never convicted because they dropped the case a second time. So he was held in pretrial detention, and shouldn't that be viewed the same as pretrial detention in effect? I think Mott actually controls on this issue. I don't want to use the word frivolous, but there is no factual basis and there is no basis in law to say that when someone is being held for a potential retrial for years, that that person is being held in connection with a conviction that's already been reversed and rendered a nullity. That, to me, is preposterous. I did want to not ignore Judge Bianco's. Right. One of his very important questions is it is a mistake, I think, and it causes all kinds of mischief if you start to take the government's definition of imprisonment in that sentence and put it elsewhere. In other words, the government says imprisonment in this one sentence, the commencement provision. Right. What's the mischief? It's just confinement. What's the mischief? Because they're saying imprisonment is incompatible with supervised release. They can't run at the same time. Well, if that were true, Congress wouldn't have had to specify, first, imprisonment in connection with a federal conviction for a federal, state, or local crime. It would have already been included in confinement. And every case we've cited to you on the issue of when supervised release commences, this is the Fifth Circuit, a number of cases we cite in the reply brief, Blevins in Virginia, they all hold that supervised release commences upon release from the custody of the BOP. No circuit has ever said that if you go immediately into state imprisonment, that your supervised release commences. No court has said that. I'm not sure if that's true. I haven't found a case. You haven't cited one. The government hasn't cited one. I don't think any court has addressed this issue. There's some about administrative detention, whether that's imprisonment or not. There's some under the Adam Walsh Act when you go into civil confinement, which is continuing to be BOP custody. So many circuits have said that doesn't commence. So this particular issue, I don't think any circuit has decided. But the government is saying that imprisonment means confinement. And so if imprisonment means confinement, then there's no distinction. They're not just saying that. Johnson said that. Justice Kennedy said that in Johnson. I just read it to you a few minutes ago. But that was not about anything other than BOP custody. The issue there was when is a person released from BOP confinement? And the court held that if they're held beyond the time by the BOP. What was his total sentence, total time period of imprisonment? My client's total sentence? So there was the 37 months for the federal crime. Right. He was released from the BOP's custody on October 30th of 2013. Right. He then remains in state custody until January 17th of 2023. He's released into the community. He thinks he's done all he's required to do and is free. And he's contacted by the U.S. Probation Office who says, we haven't heard from you. And so that prompted our motion to say, no, no, this time has to be treated as supervised release under Mott. So it's like a total of what, 37 months plus? Plus a decade. Plus a decade. All right. Thank you. Thank you so much. With the forbearance of the presiding judge, I have a simple question, less granular than the questions that you've been addressing. This is a case of first impression in the circuit? I think on this precise question, yes. You've been a federal defender for many years, and it's always good to see you because you're always well prepared. Good, thank you, General. And we're all grateful for that. But how many years have you been doing this? Going on 28 years. 28 years. Yes. And do you remember any case like this in 28 years? Well. I mean, why is this a case of first impression? This is sort of a macro. I have the answer for you. Go ahead. I have the answer. It's because this is an extraordinary fact pattern. How extraordinary is it, really? It's extraordinary because most defendants who finish their federal term of imprisonment are either released outright or they're released directly to a state to serve a sentence that's already been imposed for a state conviction. Or they're convicted. Exactly. If they're convicted, then it's told. 99% of the people are probably convicted. So I think that's why this doesn't come up. But I would say that the Blevins case is factually as close as we've seen. It's a district court case, but it does cite some precedents from this circuit that recognize that even for people who desperately need supervision and even where supervision is not possible. So that was the removal case for Balogun. They said it runs because we have to read the statute according to its terms even if it may seem counterintuitive. All right. Thank you, Mr. Zasko. Thank you so much. You're welcome. We'll now hear from the government. Mr. Skernick. Good morning, Your Honors. Matthew Skernick for Appley United States. May it please the Court. The district court here properly applied the Supreme Court's decision in United States v. Johnson to hold that the defendant's term of supervised release commenced upon his- Although it seems like the district court actually relied on tolling. If you read, it seems like the district court was saying it was tolled. And you make that argument. It's not your main argument. But Mr. Zasko, I think, makes a very good point that that seems to be foreclosed by Mont that in this situation he was not convicted and the charges were dismissed. And so, right, isn't Mont control of this issue that this is not one where it's tolled? No, Your Honor. So the district court here cited to Johnson. It also did talk about tolling. But I think either ground- It used the word tolled language. It didn't say anything about commencement, right? Where did it say commencement in the district court's decision? That his supervision never commenced. I didn't see that anywhere in the decision, right? The district court did cite Johnson for the point about when that supervision happened after release from confinement. I don't have the decision in front of me, but I know- The court finds a three-year supervised release imposed in this case at sentencing was tolled during his time in state custody and commenced upon his release from state custody. So I'm having a hard time understanding how this could be tolled in light of Mont. Yes, Your Honor. So the district court, in the sentence you just read, said commenced upon his release from state custody. That's the language from Mont. Now, there's two provisions in Section 3624E. There's the commencement provision and the tolling provision. Now, this court can decide this case and can affirm the district court solely based on the commencement provision and the Supreme Court's decision in Johnson. This court does not have to reach Mont. This court does not have to reach the question. Why is that so if, in fact, the defendant is kept in state custody awaiting trial that never occurs? Why isn't that pretrial detention at that point, after the conviction was overturned? So first, Your Honors, you don't have to reach that question. And the reason is, if you look to the Supreme Court's decision in Johnson, in Johnson, the defendant there had his underlying conviction vacated, over-served his prison sentence, but the Supreme Court never asked, was the time that defendant spent in custody in connection with the conviction? The Supreme Court instead looked only to the commencement provision and asked, when does supervision commence? And we know that that wasn't an accident because does the statute refer to a connection with a conviction, or words to that effect? A connection with a, yeah, a connection with a conviction. The tolling provision does, but not the commencement provision, Your Honor. Right, but we're looking at the, forget everything that happened before his state conviction was overturned. Just leave that aside. Let's just take that as a situation. And that, you know, you could have a, And then at that point, why isn't there, how can there be tolling? So, there's sort of two arguments here, Your Honor. The first is, the government's position is that supervision commenced on January 17, 2023. Now let's say Your Honors disagree with us on this, and think supervision instead commenced in October 2013, when the defendant was transferred from federal prison to state prison, pursuant to a detainer. Yeah. It's not the kind of supervision Congress intended, but it is supervision of a sort, I suppose. So that's the instance, Your Honor, in which the tolling provision would apply. And in that instance, then the question becomes, was that time in state custody in connection with a conviction? Again, we don't think Your Honors have to reach that issue, but if you are going to reach it, here's our position on it. The Supreme Court and this Court have recognized that in connection with is language that has a very broad meaning. They've recognized it specifically in the context of 3624E. In Mott, the Supreme Court said time in custody can be connected to a conviction, even if it happens before the conviction, because Mott involved pretrial custody, later credited for time served. And then this Court in Busse said that time spent in custody could be connected to a conviction, even if it was not the direct result of the conviction. Busse was somebody who was incarcerated because of a parole violation. Well, that may be fine, but the conviction is gone. It was overturned. So how can there be a holding a person in connection with a conviction that is a nullity? So this Court in Busse said that one of the reasons why Mr. Busse's time in custody was connected to his conviction is because it was a consequence of his conviction. In this case, Mr. Freeman would not have spent an additional four or five years in prison if he had not been convicted in the first place in state court. I understand that conviction was vacated. Right. But if instead he had been acquitted at trial, if instead charges had initially been dismissed, he would have been released at that time. But again, this is not an issue. Why don't you focus on the commencement for a moment? Why isn't Mr. Zahas' argument that you should read release from imprisonment and bureau of prison in the context of federal imprisonment only? What's your response to that? You should look at the statute as a whole. It seems clear that the statute as a whole is geared towards custody and BOP and release from BOP, and that's how the commencement provision should be interpreted. What's your response to that? Several points, Your Honor. So the first point is to go back to the text of the statute and the Supreme Court's decision in Johnson where the Supreme Court said the benchmark for when supervision commences is when you are actually freed from confinement. Mr. Freeman was not freed from confinement when he was transferred from a federal prison facility to a state prison facility pursuant to a detainer. He remained confined at that point. That's the first point. The second— The state—I don't know enough about state sentencing to be able to be authoritative at all on this, but presumably there's a period of parole, release on parole, or supervision of some sort at the state level. I take it that his sentence did not have that at the state level because he was—we don't know. I mean, when he was sentenced at that—he was sentenced after the convention was in place, before it was overturned, right? And it was just a term of years at that point? Was that right? I'm not sure if there was a term of parole or supervision. The supervised release works perfectly if it's purely a federal case, but maybe there are circumstances when you're turned over to the state and the state prosecutes that abrogates, in effect, the supervised release or was allowed to occur, notwithstanding the fact that the supervised release in the federal system doesn't reach that and that, therefore, you have a complete termination of federal interest once the state is taken over. Well, Your Honor, Congress actually said in the statute, in Section 3624E, said that federal supervised release would run concurrent to any other term of parole, supervised release, or probation for another offense. Now, Congress did not say the same thing for state custody. Congress did not say that federal supervised release would run concurrently with state custody. And just to get back to Your Honor's question about, again, why does imprisonment in the second sentence of 3624E, the commencement provision, why does imprisonment include not just federal but also state custody? So you have to return to the bedrock principle of statutory construction that when Congress uses the same word in two different places in the same statute, it typically means the same thing. So in the very next sentence, the tolling provision, Congress says supervision does not run during any period when someone is imprisoned in connection with a conviction for a federal, state, or local crime. If someone's imprisoned in connection with a conviction for a state crime, they're very likely to be in a state prison. For that reason, we know that imprisoned means both federal and state custody. Some circuits, Judge Cabran has pointed out, I think accurately, that this is a matter of first impression, I think not just before this circuit, but I think any circuit as it relates to a state conviction. But there are some circuits, the Fifth Circuit and the Sixth Circuit, have said before Johnson that administrative detention, if you go into ICE custody, that your supervised release starts, even though you're obviously in custody, that that's not imprisonment. So they seem to at least suggest that it's not just a physical thing. That's correct, Your Honor. And here's why ICE custody is different than state custody. In Section 3583D, Congress specifically said that transfer to ICE custody for purposes of removal from the United States, so ICE administrative detention can itself be a condition of supervised release. All right. How about this? I was trying to think of situations. But if he had been released for a day, he finished his federal sentence, but they don't show up at the jail. He gets out for a day, assuming we disagree with him on tolling, his time would have run, right, even though it was a day. So I would agree, Your Honor, that if he was released for a day, then this would be a question about tolling, not a question about commencement. It would have commenced at the time he was released. And there actually is an example of this. So the Blevins case Mr. Zass cited. It was on the steps, right? Yeah. In that case, he was sentenced to time served, walked out of the courthouse, is then rearrested outside the courthouse on state charges that were eventually dismissed. So Blevins is a tolling case, and Mott controls there. But our position is that this case is a commencement case, primarily, and this court can decide based on the commencement provision. All right. Thank you. Mr. Zass, you have two minutes. Just three quick points, Your Honor. I'm going to say very little about Mott except to quote you what they decided there. The court ruled that, quote, time in pretrial detention constitutes supervised release only if the charges against the defendant are dismissed or the defendant is acquitted. That's precisely what happened. The charges were dismissed. Therefore, there was no tolling. The harder question, where there is no 100% controlling authority, is did the supervised release term commence? I think the government may have just won the case for me because they told you that the bedrock principle of statutory interpretation is that when a court sees a term in a statute, the presumption is that the word means the same thing throughout unless there's a clear indication to the contrary. So let's play that out. This whole section of 3624 is talking about the federal term of imprisonment. That's the one that the judge imposed at sentencing. That's the one that's followed by the supervised release term. But all of a sudden now, in E, the government says, no, imprisonment in the commencement provision is much broader. It's any confinement. So if you're still in some confinement, and presumably this covers ICE custody because they haven't explained why that's not confinement. So now there's a new meaning, a bigger meaning. But then it gets worse because then you go on in the tolling provision, and now this word that the government has just defined as any custody, Congress felt the need to now say, no, it's imprisonment in connection with a conviction for a federal, state, or local crime that tolls it. But if imprisonment already includes any confinement, they wouldn't have had to put in the specific reference to federal, state, or local crimes. It would have already been included. So the bedrock principle that the government cited to you supports us. The word imprisonment in this statute, and in fact throughout Title 18, is about federal imprisonment. That's what the Congress is regulating. They're not authorized to regulate state confinement. All right. If I may just finish, Your Honor. Go ahead. But my point is when they wanted it to mean something other than federal imprisonment, they said so explicitly in the tolling provision. If I can do one final ten-second point, Your Honors. I'll take ten seconds after that. Thank you. If you find that the commencement provision is not clear, Fifth Circuit says it's clear, but if you find it's ambiguous, I would urge you to interpret the commencement provision in light of the tolling provision. In other words, the tolling provision, we know Congress didn't want there to be tolling where the defendant is in prison and the charges are dismissed or acquitted. They viewed that in a way as unfair. In that situation, they were willing to say that we're going to allow that time in prison to count as supervised release, even though we all know it's not really supervised release in the way that it normally is. But that's the only situation they chose to address. Johnson dealt with someone being held extra time, which is certainly unfair, right? In Johnson, he was held extra time, right? In the BOP. Right. But it's still unfair. So we're not addressing fairness or unfairness. Johnson, it was certainly unfair of him that he was held. And the Supreme Court yet said for purposes of commencement, you're out of luck, right? In that context. I mean, that was 19 years before. I know, but you're trying to say this is about fairness. No, no, no. I'm trying to tell you that the statute itself decided that certain time in prison would not be tolled and that the concern was fairness. And you should read it not only in light of the tolling provision, but if there really is ambiguity, the rule of lenity would apply because this is a criminal statute and not part of the sentence. All right. Judge Kabanis has a question for you. A very simple question. What is it that you want from us? That is, what is the remedy that you're seeking from the Court of Appeals? Which is to say, what is the decretal language that would accomplish the objectives that you're seeking? Yes. It would be for the foregoing reasons. We reverse the order of the district court and hold that Mr. Freeman's term of supervised release expired no later than September 12, 2020. So he'd be done. Yes. You would also, if we ruled against you, you could go in January and seek early termination if you believe based upon all these equitable fairness considerations. You could go back to the district court and say, you know, we spent all this time in state custody. It's now been a year. Terminate, right? And she would have completely within her authority just to terminate him in January, right? If you rule against us, that is certainly something we will pursue. But my point to you, Judge, is that that decision by Judge Matsumoto, if we have to go there, is a discretionary decision. She can deny it or grant it. I'm giving you a legal argument. And if I'm right on my legal argument, supervised release ended, what, two, three, five years ago? Right. And so I don't think if this were a direct appeal of a sentence and we were showing you that there's an illegal sentence, you would say to me, well, you can go make a compassionate release motion and tell the court. I wasn't suggesting it in that way. I was just suggesting that if there's any, assuming you're incorrect about the statute, that there's still equitable ways that a court could address these types of rather unique situations. That was my only point. I totally agree with and accept that point. I thank you for the point, but it doesn't change the legal issues here. I understand. All right. Thank you, Mr. Zast. Thank you, Mr. Skernick. We'll reserve decision. Have a good day. Thank you.